# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **W.L., T.L., and E.L.**

**No. 17-0828** (Wood County 17-JA-116, 117, and 118)

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.L., by counsel Ernest M. Douglass, appeals the Circuit Court of Wood County's August 30, 2017, order terminating her parental rights to W.L., T.L., and E.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Justin M. Raber, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in (1) failing to consider thirteen-year-old W.L.'s wishes at disposition, (2) denying her motion for an additional psychological evaluation, (3) denying her motion for an improvement period, and (4) denying her post-termination visitation with the children.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed an abuse and neglect petition that alleged petitioner repeatedly physically and emotionally abused W.L. in the presence of the other children. According to the petition, during an investigation, petitioner admitted to a DHHR worker that, in December of 2016, she repeatedly slammed W.L. against a wall with her hands around his neck and punched him in the face, in addition to other physical abuse. Both petitioner and the child indicated that this was an isolated incident, and petitioner informed the DHHR worker that she and the child began therapy to address the issue. Based on these facts, the children were permitted to remain in the home while the DHHR's investigation continued. The petition further alleged, however, that approximately two days after the DHHR worker met with petitioner, W.L.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner does not set forth a specific assignment of error concerning the circuit court's termination of her parental rights.

appeared for school with severe bruising, welts on his face and neck, a black eye that was almost swollen shut, and numerous abrasions to his head, face, and neck. According to the child, petitioner beat him and threw him out of the home. The child further disclosed that petitioner was physically and mentally abusive to him. The child said that, after telling petitioner about his suicidal ideations, she told him to commit suicide out of the family's presence. According to the petition, that same day, DHHR workers again spoke with petitioner, who admitted that she physically abused the child and made him leave the home because she was angry that he told her she was a bad mother. Law enforcement investigated the incident and eventually charged petitioner criminally with child abuse by a parent resulting in injury. The children were removed from petitioner's care.

The circuit court held two adjudicatory hearings in May of 2017, during which it heard testimony from a DHHR employee regarding petitioner's admissions to physical abuse.[3] W.L. also testified consistently with his prior disclosures concerning petitioner's extensive physical and emotional abuse. Petitioner testified that, despite her prior admission, the incident in December of 2016 did not occur. She further admitted to striking W.L. repeatedly during the incident in April of 2017, but indicated that the child's behavior caused this reaction. Ultimately, the circuit court adjudicated petitioner as an abusing parent based on her physical abuse of W.L. on multiple occasions in the presence of the other children.

Later that month, petitioner moved for a post-adjudicatory improvement period. Before ruling on the motion, the circuit court ordered petitioner to undergo a psychological and parental fitness evaluation. After completing the evaluation in August of 2017, the report indicated that petitioner took little responsibility for the physical abuse and instead blamed W.L. for causing her violent actions. In response to a question as to why she was not violent toward the younger children, petitioner stated that they were "not at that stage yet." Petitioner scored extremely high on the "Child Abuse Potential Inventory" and her responses indicated that she exhibited "a concerning level of abusive traits and characteristics that are endorsed by known abusers." The evaluator further noted that "research indicates this assessment produces few false positives and high scores in this area are predictive of present and future physical child abuse." The evaluation also indicated that petitioner admitted to physical violence in her romantic relationships, resulting in two prior criminal charges of assault against her. Petitioner additionally admitted to a history of multiple suicide attempts, depression, drug abuse, and having abused marijuana the day of her evaluation. The evaluator diagnosed petitioner with borderline intellectual functioning and unspecified personality disorder with borderline and antisocial features. Ultimately, the evaluator found that all three children were at "grave risk of physical abuse and harm" in petitioner's care and that her prognosis for improved parenting was "extremely poor to non-

---

[3]It is unclear from the record whether the DHHR employee testified to petitioner's actions at the initial adjudicatory hearing on May 22, 2017, or at an earlier hearing. The circuit court's final adjudicatory order following the hearing on May 31, 2017, indicates that it could have adjudicated petitioner "at the conclusion of the last hearing based simply on the testimony of . . . a department worker . . . and [petitioner]." The adjudicatory transcript, however, does not contain any testimony by a DHHR employee. Regardless, the record indicates that the DHHR employee testified concerning petitioner's actions, whether such testimony was presented at one of the adjudicatory hearings or earlier in the proceedings.

existent." Petitioner then moved to have an evaluation performed by a psychologist of her choice. The circuit court denied this motion, but permitted petitioner to have another psychologist review the evaluation.

Prior to the dispositional hearing in August of 2017, petitioner failed to produce an expert witness on the issue of her psychological evaluation. She further declined to examine the psychologist that performed her evaluation. Petitioner testified that she completed five counseling sessions, an intake for anger management services, and inquired about parenting classes the day before the dispositional hearing. However, petitioner provided no records or testimony from providers to corroborate these assertions. Further, petitioner continued to blame W.L. for the abuse inflicted and specifically requested that only her two youngest children be returned to her custody. Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory improvement period and terminated her parental rights. The circuit court further denied petitioner post-termination visitation with the children.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

Petitioner first alleges that the circuit court erred in failing to take thirteen-year-old W.L.'s wishes into consideration prior to disposition. This assignment of error, however, is entirely disingenuous and without merit, as petitioner specifically testified at the dispositional hearing that W.L. made his wishes known to the circuit court. According to the record, petitioner testified that W.L. "wrote a letter to the [j]udge saying he does not want to come back home[.]"

---

[4]The non-abusing father of W.L., T.L., and E.L. retained his parental rights below. According to respondents, T.L. and E.L. are currently in the father's custody. Respondents further indicate that W.L. remains in the legal and physical custody of the DHHR due to his need for continued mental health treatment. Accordingly, W.L.'s permanency plan is dependent on his treatment needs and best interests in light of his mental health.

Moreover, the record further shows that the guardian submitted a report to the circuit court prior to disposition that indicated, under a heading styled "**CHILD'S EXPRESSED WISHES**[,]" that W.L. "does not want to return to [petitioner's] custody and would offer her rights be terminated." Accordingly, there is no support in the record for petitioner's argument that the circuit court's finding that "[t]he [c]ourt [has] taken into consideration the wishes of the children regarding termination of parental rights" is erroneous. Thus, we find no error.

Next, petitioner argues that the circuit court erred in denying her motion for an additional psychological evaluation.[5] According to petitioner, she was entitled to a second evaluation because the evaluation in question "made two factual assumptions that had not been proven and/or were incomplete." The first of these allegedly inaccurate assumptions was that the incident from December of 2016 actually occurred. Petitioner argues that "the lower court never specifically found that incident to have occurred" and, further, that she specifically denied the incident during her testimony. We find no merit to this argument. The evaluation included consideration of all the facts of the case, which not only included the circuit court's adjudicatory findings, but also the information contained in the DHHR's petition, which asserted that petitioner admitted to the abuse in December of 2016 and W.L. corroborated the same. Moreover, the evaluation specifically reflects petitioner's later recanting of her actions during the December of 2016 incident. Accordingly, it is clear that the evaluation includes a full and fair representation of the facts of the case through adjudication. As such, petitioner is entitled to no relief upon these allegations.

Petitioner additionally argues that the evaluation mischaracterized her response to W.L.'s suicidal ideation. According to petitioner, the evaluation "mischaracterized this incident as though [she] was condoning [W.L.'s] suicide and coldly dismissed him from the home when, in fact, she prevented it and he left of his own volition." Petitioner further alleges that she had to protect the younger children "from seeing such a thing" and later confirmed that W.L. was safe at his grandmother's home. Again, we do not find that this allegation is sufficient to warrant an additional evaluation, especially given the fact that petitioner's testimony concerning this incident at the adjudicatory hearing corroborates the version of events as set forth in the evaluation. According to the adjudicatory transcript, the following exchange occurred with petitioner:

> Q.    Okay. You also testified about some - - that [W.L.] indicated to you that he was having some suicidal thoughts and wanted to kill himself - -
> A.    Yes.

---

[5]Petitioner repeatedly references her request for an "independent" evaluation. However, she provides no evidence that the evaluator in question was biased or in any way failed to maintain an independent posture during the proceedings, beyond her general assertion that "Saar [Psychological Group, PLLC] is routinely hired by and paid by the [DHHR]." Moreover, she provides no legal authority that would permit a parent in abuse and neglect proceedings to choose a specific evaluator in such situations. Accordingly, we decline to address her allegations that she was entitled to an "independent" evaluation, given the total lack of evidence and authority for such a claim.

Q.    - - is that correct? And you stated that you told him not to do it in front of you?

A.    Yes, ma'am.

Further, the child's testimony additionally supports the fact that petitioner disregarded his expressed intention to commit suicide. According to W.L., after he told petitioner that he intended to commit suicide, she told him to "take it somewhere else" because she couldn't "stand watching my son die in front of my eyes." W.L. also testified that, following this altercation, petitioner told him to "get out of the house[.]" Moreover, the evaluation indicates that petitioner admitted that she told the child to commit suicide outside the view of the family because she "didn't want him to do it in front of me and his siblings." Accordingly, we find that the evidentiary record more than supports the evaluator's conclusions regarding "the significant callousness [petitioner] evidenced regarding her comments to [W.L.] regarding not committing suicide in front of her, to go somewhere else."

Further, petitioner notes that the circuit court erred in relying heavily on the evaluation when it included the following language: "The interpretations of psychological tests presented in this report represent hypotheses and should not be used in isolation from other relevant information . . . . Test results are probabilistic in nature and should be interpreted cautiously and in conjunction with other data." However, petitioner ignores the fact that the circuit court did not consider this report in isolation, but instead considered it in conjunction with the entirety of the record below. Moreover, we disagree with petitioner's assertion that her due process rights were denied "by being prevented from obtaining an independent evaluation." The record clearly shows that the circuit court permitted petitioner to obtain an expert witness to testify to the results of the evaluation or otherwise examine the evaluator concerning any alleged errors contained therein. Despite a continuance to achieve these ends, petitioner, thereafter, chose not to explore either option. Accordingly, it is clear that petitioner had an opportunity to present her own evidence regarding the evaluation or otherwise question the evaluation's accuracy, but chose not to do so. For these reasons, we find no error in this regard.

Next, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she established that she was likely to fully comply with the terms and conditions thereof. According to petitioner, she was honest about the incidents of abuse and openly admitted to her anger problem, thereby acknowledging the abuse. She further argues that she proactively addressed the issues by initiating her own services to remedy them. We do not find these arguments compelling.

Pursuant to West Virginia Code § 49-4-610(2)(B), a circuit court may grant an improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period[.]" However, we have also noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements"). While petitioner argues that she satisfied the burden to obtain an improvement period, she

5

ignores the fact that the psychological evaluation specifically listed her prognosis for improved parenting as "extremely poor to non-existent." This was based on the fact that petitioner continued to blame W.L. for her violent acts, which she continued to do at the dispositional hearing. Specifically, at disposition, the following exchange took place with petitioner:

> Q. Are you blaming your actions on the fact that [W.L.] said that you were a bad mother, and that was the reason you reacted the way you did?
> A. Yes.

Based on this testimony, it is clear that petitioner continued to blame W.L. for the extensive physical abuse she perpetrated against him.

> We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Because petitioner failed to acknowledge the abuse, it is clear that an improvement period would have been inappropriate. As such, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

Finally, petitioner argues that the circuit court erred in denying her request for post-termination visitation because the evidence established that visitation with the younger children went well during the proceedings and they shared a strong bond. We disagree. We have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). Here, the record indicated that petitioner should not have continued contact with the children because it would not be in their best interests. This is especially true given the fact that petitioner failed to accept responsibility for her physical abuse of W.L. and indicated that, when the younger children

reached a certain age, such physical abuse would be appropriate for them as well. This ultimately led the evaluator to conclude that all three children were at "grave risk of physical abuse and harm" from petitioner. Accordingly, we find no error in the circuit court's denial of post-termination visitation.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 30, 2017, order is hereby affirmed.

Affirmed.

7

**ISSUED**:  March 12, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker